NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000663
30-OCT-2017
08:14 AM

NO. CAAP-15-0000663

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

ALOHA SPORTS INC., A HAWAII CORPORATION,
Plaintiff-Appellant,
v.
THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,
AN UNINCORPORATED ASSOCIATION,
Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 06-1-1832)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Plaintiff-Appellant Aloha Sports Inc. (Aloha) appeals from the (1) "Judgment" entered August 11, 2015 (Judgment); (2) "Order Granting In Part And Denying In Part Defendant The National Collegiate Athletic Association's Motion To Reinstate Order Awarding Attorneys' Fees And Costs" entered August 4, 2015 (Reinstatement Order); (3) "Order Granting In Part And Denying In Part Defendant The National Collegiate Athletic Association's Motion For Attorneys' Fees And Costs, Filed January 31, 2012" entered August 4, 2015 (2015 Order Awarding Fees and Costs); and (4) the June 9, 2015 "Order Granting Defendant The National Collegiate Athletic Association's Motion For Judgment On The Pleadings, Or In The Alternative, For Summary Judgment On The Sole Remaining Claim For Unfair Competition Alleged In Plaintiff's Third Amended Complaint, Filed May 27, 2011, Filed

September 25, 2014" (Summary Judgment Order) all entered in the Circuit Court of the First Circuit[1] (circuit court).

The circuit court entered judgment in favor of Defendant-Appellee The National Collegiate Athletic Association (the NCAA) and against Aloha and awarded attorneys' fees and costs to the NCAA consistent with its oral findings and conclusions during the February 27, 2012 hearing on the NCAA's Motion for Attorneys' Fees and Costs, filed January 31, 2012.

On appeal Aloha contends the circuit court:

(1) erroneously granted summary judgment based on the finding that Aloha was judicially estopped from pursuing its unfair methods of competition (UMOC) claim pursuant to Hawaii Revised Statutes (HRS) § 480-2, Aloha waived its UMOC claim at the pretrial hearing, Aloha's UMOC claim was barred by issue preclusion, and that Aloha failed to present facts to prove a genuine issue of material fact existed as to the "nature of the competition," an element necessary for a UMOC claim.

(2) erred when it entered its Reinstatement Order and 2015 Order Awarding Fees and Costs because the NCAA's January 31, 2012 motion for attorneys' fees and costs was deemed denied based upon Hawai‘i Rules of Appellate Procedure (HRAP) 4(a)(3) since no order was entered upon the record within 90 days after the date the motion was filed and because the NCAA did not submit sufficient evidence to demonstrate that the attorneys' fees awarded complied with the terms of the 2015 Order Awarding Fees and Costs.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Aloha's points of errors as follows, and affirm.

I.

Aloha is a Hawai‘i corporation and former bowl-sponsoring agency that produced NCAA division 1-A post season

---

[1]     The Honorable Karl K. Sakamoto presided.

football bowl games. The NCAA is a voluntary, non-profit, unincorporated association of approximately 1,200 colleges, universities, athletic conferences, and sports organizations. The NCAA regulates and coordinates rules of play governing intercollegiate athletic competition among its member institutions, including certification of postseason football bowl games. The NCAA formulates rules governing Bowl Games and annually certifies those Bowl Games that meet its criteria.

The NCAA does not own or operate the Bowl Games. Bowl Games are operated by third-party promoters (bowl-sponsoring agencies). Each Bowl Game must be certified annually by the NCAA in order for collegiate teams to be eligible to participate in them. Bowl-sponsoring agencies that own and operate NCAA Certified Postseason Football Bowl Games, among other things: propose to the NCAA the name, site, date and time for the game and arrange for a suitable facility, which are subject to the approval of the NCAA; market the game in accordance with the requirements of the NCAA; and raise revenues to cover the costs of the game through the sale of sponsorship rights, the sale of tickets to attend the game, the sale of concessions, programs, and other products at the game, and the sale of rights associated with the game, including television broadcasts rights.

Aloha filed suit against the NCAA for claims of unfair methods of competition in violation of HRS § 480-2, tortious interference with prospective economic advantage (tortious interference), and breach of contract arising from the NCAA's decertification of Aloha's two owned and operated NCAA Certified Postseason Football Bowl Games. This decertification led to the termination of a prospective sale agreement to transfer control of Aloha to Pro Sports Entertainment, Inc. (Pro Sports).

In Aloha's Second Amended Complaint, paragraph 23(f), Aloha further alleged that the NCAA engaged in unfair methods of competition by refusing to permit a transfer of ownership of Aloha's NCAA Certified Postseason Football Bowl Games "without

good cause" (Paragraph 23(f) Claim). The circuit court[2] dismissed Aloha's Paragraph 23(f) Claim in its "Order Granting in Part and Denying in Part the [NCAA's] Motion to Dismiss [Aloha's] Second Amended Complaint with Prejudice" entered February 26, 2008. Aloha then agreed to proceed solely on its claim for tortious interference.

A jury trial was held on Aloha's claim that the NCAA improperly interfered with Aloha's prospective sale of itself to Pro Sports. The jury returned a unanimous verdict in the NCAA's favor. Thereafter, the circuit court granted in part the NCAA's Motion for Attorneys' Fees and Costs filed on January 31, 2012 (2012 Motion for Fees and Costs) and entered its Order Granting in Part and Denying in Part NCAA's Motion for Attorneys' Fees and Costs on June 19, 2012 (June 19, 2012 Order Awarding Fees and Costs).

Aloha appealed, challenging both the adverse jury verdict, the pretrial dismissal of Aloha's Paragraph 23(f) Claim, and the NCAA's attorneys' fees and costs. This court affirmed the jury verdict and reversed the pretrial dismissal of the Paragraph 23(f) Claim, finding that sufficient evidence was provided for the claim to survive a motion to dismiss. Aloha Sports, Inc. v. The National Collegiate Athletic Association, CAAP-12-0000512 (Oct. 30, 2013) (mem. op.). Additionally, this court concluded that the circuit court lacked jurisdiction to enter the award for attorneys' fees because the appeal had already been pending when the circuit court entered its June 19, 2012 Order Awarding Fees and Costs. Aloha Sports, Inc, mem. op. at *9.

On remand, after the close of renewed discovery, the NCAA moved for judgment on the pleadings or, in the alternative, for summary judgment on Aloha's Paragraph 23(f) Claim. The circuit court granted the NCAA's motion for summary judgment concluding that Aloha failed to present facts showing either an

_____

[2]     The Honorable Karen S. S. Ahn presided.

4

antitrust injury or injury to competition that was caused by the NCAA's decision not to certify the Seattle Bowl.

The NCAA moved to reinstate the June 19, 2012 Order Awarding Fees and Costs that had been vacated by the ICA solely on jurisdictional grounds. The circuit court held that "there is sufficient evidence before the Court to issue a written order awarding attorneys' fees and costs to the NCAA that is consistent with the Court's oral findings and conclusions" during the February 27, 2012 hearing on the NCAA's 2012 Motion for Fees and Costs, which was reflected by the 2015 Order Awarding Fees and Costs and denied the motion to the extent that it sought to reinstate the void order.

II.

The circuit court granted summary judgment in favor of the NCAA concluding, *inter alia*, that Aloha had failed to show the existence of a genuine issue of material fact regarding the "nature of the competition," a required element of a UMOC claim pursuant to HRS § 480-2. See Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Hawai'i 77, 148 P.3d 1179 (2006) (HMA) and Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 228 P.3d 303 (2010).

The party moving for summary judgment bears the burden of proof to show the absence of genuine issues of material fact entitling the moving party to judgment as a matter of law. Stanford Carr Dev. Corp. v. Unity House Inc., 111 Hawai'i 286, 295-96, 141 P.3d 459, 468-69 (2006). However, "[w]here . . . the moving party is the defendant and does not bear the burden of proof at trial, he may prevail on a motion for summary judgment by demonstrating that the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Thomas v. Kidani, 126 Hawai'i 125, 267 P.3d 1230 (2011) (citations omitted).

Paragraph 23(f) of Aloha's Second Amended Complaint alleges that the NCAA engaged in unfair methods of competition by "refusing to permit a transfer of ownership of Plaintiff's NCAA

Certified Postseason Football Bowl Games without good cause." In Aloha's first appeal, this court concluded that the alleged facts supporting Aloha's tortious interference claim were sufficient to discern Aloha's Paragraph 23(f) Claim for unfair methods of competition:

> Aloha alleged the NCAA knew about the pending sale to Pro Sports and the significance of certification to the pending transaction. Aloha further alleged the NCAA disrupted the transaction by encouraging Pro Sports to abandon the deal with Aloha and apply for a bowl game independent of Aloha. These alleged facts are sufficient to discern Aloha's claim that the NCAA employed an unfair method of de-certification to gain an advantage in the competition with Aloha to obtain a deal with Pro Sports.

Aloha Sports Inc., mem. op. at *6.

> Hawaii Revised Statutes (HRS) § 480-2 (2008) provides:
>
> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
> (b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.
> (c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.
> (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
> (e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

To prove the "nature of the competition," a plaintiff must show that "defendants' conduct negatively affects competition" and that he or she was harmed as a result of the actions of the defendant that negatively affects competition. Gurrobat v. HTH Corp., 133 Hawai'i 1, 22-23, 323 P.3d 792, 813-14 (2014). Proof of the "nature of the competition" is required in order to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior." Davis, 122 Hawai'i at 445, 228 P.3d at 325.

In this case, the NCAA argues that the circuit court correctly granted summary judgment on Aloha's Paragraph 23(f) Claim for unfair methods of competition because Aloha failed to

present any evidence that the NCAA's alleged conduct affected competition. We agree.

Aloha has not identified evidence showing that competition is being harmed, within a relevant market, identified the competitive effects in that market, or shown harm to consumers. See Wadsworth v. KSL Grand Wailea Resort, Inc., 818 F. Supp. 2d 1240, 1268 (D. Haw. 2010); Gough v. Rossmoor Corp., 585 F.2d 381, 389 (9th Cir. 1978) (explaining that before a court can consider an antitrust claim, it "must know with what field of competition [the court] is concerned and the dimensions of that field. Market definition is essential."). It is not sufficient for Aloha to claim that it has been injured because it could not sell its business to Pro Sports. See JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc., 509 F. Supp. 357, 364 (N.D. Cal. 1981), aff'd, 698 F.2d 1011 (9th Cir. 1983) ("[T]he plaintiff must show something more than simply an adverse effect on his own business; he must show an adverse impact on the competitive conditions in general as they exist within the field of commerce in which the plaintiff is engaged.") (internal quotations and citation omitted).

Aloha argues that there was "*competition between the NCAA and Aloha* to obtain a deal with Pro Sports" and that "[t]he NCAA eliminated Aloha as a participant in that competition by employing the unfair method of de-certification of Aloha to gain an advantage *in the competition with Aloha* to obtain a deal with Pro Sports." However, the NCAA serves as a standard setting body, which certifies organizations to participate in its post season football bowl games. In contrast, Aloha is a bowl-sponsoring agency, which independently contracts with participating teams, television stations, and sponsors in its operation of an NCAA certified bowl game. Aloha has not demonstrated how the two entities are competitors with one another.

Aloha contends that a genuine issue of material fact exists as to the "nature of the competition" requirement because this court had already determined that Aloha sufficiently pled a

7

UMOC claim. See Aloha Sports, Inc., mem. op. at *5-6. However, this court's analysis in the first appeal was limited to whether Aloha had sufficiently pled a claim for relief as a matter of law. Aloha Sports Inc., mem. op. at *6. On remand, Aloha did not offer evidence of how the NCAA's refusal to permit a transfer of ownership of Aloha's Certified Postseason Football Bowl Game negatively affected competition and that Aloha was harmed as a result of the NCAA's actions that negatively affected competition. Moreover, Aloha failed to specify the relevant market and an anti-competitive effect within the market. See Wadsworth v. KSL Grand Wailea Resort, Inc., 818 F. Supp. 2d 1240, 1268 (D. Haw. 2010).

Finally, Aloha argues that the NCAA had prior knowledge of its preliminary agreement with Pro Sports conditioned upon, inter alia, recertification of the Seattle Bowl and acted with an improper motive when it "refus[ed] to permit a transfer of ownership." Aloha's contentions are primarily based on the NCAA's conduct during the 2003 NCAA Football Certification Subcommittee Meeting (certification meeting) held on the dates of April 28, through May 1, 2003. Aloha submits that, during the certification meeting, the NCAA denied certification of the 2003 Seattle Bowl to induce Pro Sports to abandon its agreement with Aloha and to instead submit an independent bid to operate the bowl game in the future. Prior to the certification meeting, Aloha and Pro Sports executed an "Irrevocable Binding Letter of Intent" in which Pro Sports was to acquire the stock and pay specified outstanding liabilities of Aloha upon certification of the 2003 Seattle Bowl. The letter of intent was negotiated without any input or participation by the NCAA. The subcommittee holds its annual certification meeting during which representatives of the various bowl games are in attendance to respond to the NCAA's questions regarding certification or recertification. However, Terry Daw (Mr. Daw), owner of Aloha, did not attend the 2003 certification meeting to address the concerns of the NCAA despite all the apprehensions and negative press surrounding the Seattle Bowl. Instead, the 2003

certification meeting was attended by Paul Feller (Mr. Feller), the CEO of Pro Sports, and James Haugh (Mr. Haugh), Executive Director of the Seattle Bowl, at which time both were informed that the NCAA would not be recertifying the Seattle Bowl. Mr. Haugh testified that "in the best interest with Pro Sports purchasing the game" Mr. Daw, did not attend.

Aloha provided testimony of Mr. Feller and Mr. Haugh to support its contention that the NCAA engaged in unfair methods of competition. However, the deposition testimony from Paul Feller only revealed that Mr. Feller was informed by the NCAA that Pro Sports, like any other entity that wanted to put on a bowl game, could submit an initial certification application for a new bowl game after the NCAA had informed Aloha and Pro Sports that Aloha would not receive recertification. Further, the deposition testimony of Mr. Haugh only provided support that the NCAA inquired whether Mr. Feller was interested in submitting a bowl application the following year. This evidence does not create a triable issue concerning the "nature of the competition" and that the NCAA refused to allow transfer of ownership. Instead, the NCAA's decision to deny certification was justified under the terms of the NCAA Handbook.

The NCAA has specific requirements for certification of all bowl games which are set forth in its Handbook. The 2001-02 Handbook provided: "If the management of a certified game fails to comply with . . . the NCAA's approved policies and procedures, the subcommittee has the option to withhold certification for . . . one year or fine it a percentage of its gross receipts." The terms of the Handbook allowed the NCAA to withhold certification from a bowl game for one year if management failed to meet certification requirements. Aloha failed to comply with the NCAA's policies, which legitimately entitled NCAA to withhold certification. The NCAA asserts that there is no permanent decertification of bowl games and that the Seattle Bowl was decertified for a period of one year, at which time Aloha would have been eligible to seek recertification.

The NCAA submitted evidence to support the showing that it acted with legitimate business reason when it decertified the Seattle Bowl. Reasons for the decertification included but were not limited to: Aloha missing two deadlines for providing a Letter of Credit to the NCAA for the 2002 game; Aloha failing to reimburse the participating teams pursuant to its contracts with them; Aloha's failure to pay its vendors; Aloha's failure to pay sales tax for its ticket sales to the State of Washington; Aloha had soured its relations with the Seattle Chamber of Commerce; Aloha was late in paying its application/certification fee; and Aloha had failed to refund Mountain West Conference its deposit of $250,000 per its contract with the conference because there was no bowl eligible team from that conference in 2002. The NCAA has authority to oversee the operation of the bowl games and has broad latitude to make rules that affect the nature of athletic competition and to preserve the nature of intercollegiate athletics. Gaines v. National Collegiate Athletic Association, 746 F. Supp. 738, 747 (M.D. Tenn. 1990) (NCAA eligibility rules "are overwhelmingly procompetitive, are justified by legitimate business reasons, and consequently cannot be viewed as having any unreasonably exclusionary or anticompetitive effect.").

After review of the evidence presented, taken in the light most favorable to Aloha, we conclude that Aloha has failed to provide any evidence that the NCAA's conduct negatively affected competition. Accordingly, Aloha did not raise a genuine issue of material fact regarding the "nature of the competition," necessary to establish its UMOC claim and the circuit court did not err in granting summary judgment. Based on the foregoing, we need not address the other grounds for the circuit court's Summary Judgment Order.

III.

Aloha contends that the circuit court erred when it entered its Reinstatement Order and 2015 Order Awarding Fees and Costs based on the NCAA's 2012 Motion for Fees and Costs because the 2012 Motion for Fees and Costs had already been deemed denied. Aloha argues that the 2012 Motion for Fees and Costs was

10

deemed denied because no order was entered upon the record within 90 days after the date the motion was filed as required by HRAP Rule 4(a)(3)[3]. We find this argument without merit.

The NCAA filed its original motion for attorneys' fees and costs on January 31, 2012. The circuit court heard the NCAA's motion on February 27, 2012 and granted the motion with a few exceptions. The circuit court entered its order granting the 2012 Motion for Fees and Costs on June 19, 2012, more than 90 days after the filing of the motion, which was subsequently vacated by the ICA for lack of jurisdiction.

On June 12, 2015 the NCAA filed its motion to reinstate the June 19, 2012 Order Awarding Fees and Costs requesting that the court grant the NCAA's reasonable and necessary attorneys' fees and costs from the initial civil proceeding. This court "look[s] to the substance of [a] motion to determine its nature." Jaylo v. Jaylo, 124 Hawai'i 488, 496, 248 P.3d 1219, 1227 (App. 2011) (citation omitted); Madden v. Madden, 43 Haw. 148, 149-50 (1959) ("Under the rules, the substance of the pleading controls, not the nomenclature given to the pleading." (Citation omitted)). Under the circumstances of this case, it appears that the substance of the NCAA's motion to reinstate the June 19, 2012 Order Awarding Fees and Costs was essentially a renewed motion for attorneys' fees and costs. Accordingly, we construe the Reinstatement Order and 2015 Order Awarding Fees and Costs as an order granting the renewed motion for attorneys' fees and costs. Therefore, the issue of whether the 2012 Motion for Fees and Costs was deemed denied pursuant to HRAP Rule 4(a)(3) is moot.

---

[3] HRAP Rule 4(a)(3) (as amended in 2012), provides:

(a) Appeals in Civil Cases

. . . .

(3) If any party files a timely motion for . . . attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

Aloha's contention that the circuit court erred when it entered its 2015 Order Awarding Fees and Costs because the NCAA did not submit or file a spreadsheet or other demonstration that the $451,607.85 in attorneys' fees actually complied with the terms of the order is also without merit.

The circuit court entered its Order Awarding Fees and Cost based on the circuit court's oral findings and conclusions during the February 27, 2012 hearing on the 2012 Motion for Fees and Costs. The NCAA submitted attorney declarations and spreadsheets detailing the time entries with its original 2012 motion. At the hearing on February 27, 2012, the circuit court granted the NCAA's motion and disallowed certain fees, set the NCAA's attorneys and paralegal rates, and removed block-billed entries, federal court litigation entries, bankruptcy litigation entries, and entries related to litigating the HRS Section 480 claims lowering the NCAA's fees from $1,290,367.18 to $451,607.85. The NCAA submitted a proposed order to the circuit court with the new fee amount in compliance with Hawaiʻi Rules of Civil Procedure (HRCP) Rule 54(d)(2)(B)[4]. The NCAA did not seek any additional attorneys' fees or costs in its motion to reinstate the June 19, 2012 Order Awarding Fees and Costs. Therefore, it appears that the circuit court was provided sufficient information to determine a reasonable attorney's fee award in favor of the NCAA that was in compliance with the terms of the order. Accordingly, the circuit court did not abuse its discretion when it entered its Reinstatement Order and 2015 Order Awarding Fees and Costs.

---

[4] HRCP Rule 54(d)(2)(B) provides:

Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of an appealable order or judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

IV.

Based on the foregoing, we affirm the (1) "Judgment" entered August 11, 2015; (2) "Order Granting In Part And Denying In Part Defendant The National Collegiate Athletic Association's Motion To Reinstate Order Awarding Attorneys' Fees And Costs" entered August 4, 2015; (3) "Order Granting In Part And Denying In Part Defendant The National Collegiate Athletic Association's Motion For Attorneys' Fees And Costs, Filed January 31, 2012" entered August 4, 2015; and (4) the June 9, 2015 "Order Granting Defendant The National Collegiate Athletic Association's Motion For Judgment On The Pleadings, Or In The Alternative, For Summary Judgment On The Sole Remaining Claim For Unfair Competition Alleged In Plaintiff's Third Amended Complaint, Filed May 27, 2011, Filed September 25, 2014."

DATED:  Honolulu, Hawai'i, October 30, 2017.


On the briefs:

Frederick W. Rohlfing, III,
Maxwell M. Blecher, Pro Hac
Vice, (Blecher Collins
Pepperman & Joye, P.C.),
for Plaintiff-Appellant.


William C. McCorriston,
Jordon J. Kimura,
(McCorriston Miller Mukai
MacKinnon LLP),
Gregory L. Curtner, Pro Hac
Vice, (Schiff Hardin LLP),
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

13